UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 04-467-JBC

HEATHER MATHENY SUDEKAMP,                                        PLAINTIFF,

V.                  **MEMORANDUM OPINION AND ORDER**

FAYETTE COUNTY BOARD OF EDUCATION,                         DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for summary judgment (DE 13). The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendant's motion.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56 (e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**I.      Background**

The plaintiff's son, J.K., was identified as having a disability under the Individuals with Disabilities in Education Act ("IDEA") in 1997.  During the course of the development and implementation of an individualized educational plan ("IEP") to accommodate J.K.'s impairment, the parties disagreed over the proper action.  Because of various problems, J.K. was frequently absent during the fall of the 2003-2004 school year.

At an Admission and Release Committee ("ARC") meeting on October 16, 2003, the plaintiff mentioned the possibility of sending J.K. to Kamp Kessa for one week as part of his IEP.  As of that date, J.K. had accumulated 7.5 unexcused absences from school.  The ARC members did not determine whether absences during any potential camp attendance would be considered excused.  The plaintiff submitted a request for a due process hearing pursuant to the IDEA on October 20, 2003.  The plaintiff enrolled J.K. in Kamp Kessa for one week from October 20-24, 2003.  Because of further disagreements over the propriety of J.K.'s returning to school after the week at camp, he continued to accumulate unexcused absences.

On November 10, 2003, the Assistant Director of Pupil Personnel ("DPP"), Nancy Jackson, notified the plaintiff that J.K. was an habitual truant, having amassed 16 unexcused absences.  When the plaintiff failed to correct the problem as required under state law, the DPP filed a criminal complaint on November 20, 2003.  The plaintiff was prosecuted, tried, and found not guilty.

The plaintiff subsequently filed this action against the defendant, alleging violations of section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203; the plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution; and K.R.S. § 344.280(1).

II. Legal Analysis

    A. Section 504 of the Rehabilitation Act

Section 504(a) of the Rehabilitation Act prohibits "discrimination under any program or activity receiving Federal financial assistance" by reason of disability. It is illegal to "discharge, intimidate, retaliate, threaten, coerce or otherwise discriminate against any person" for seeking to enforce section 504. 29 C.F.R. § 33.13.

To succeed under section 504, a plaintiff must (1) be handicapped as defined under the Rehabilitation Act; (2) be otherwise qualified for participation in the program; (3) have been excluded or discriminated against solely because of his or her handicap; and (4) establish that the program receives federal funding. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996). Here, the parties disagree whether the third prong — discrimination based solely on handicap — has been satisfied.

The plaintiff alleges that the defendant violated section 504 by filing a criminal truancy complaint in retaliation for her request for a due process hearing

under the IDEA. The defendants do not dispute that the plaintiff's right to request a hearing under IDEA is protected by section 504. Rather, the defendants claim that the criminal action against the plaintiff was not initiated in retaliation for her actions.

To state a prima facie case for retaliation, the plaintiff must establish that (1) she was engaged in protected activity; (2) she suffered adverse action; and (3) the adverse action was taken because of the protected activity. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) (addressing retaliation claim under ADA). To satisfy the third element, the plaintiff must show that the defendant knew of the protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 n.3 (6th Cir. 1999)(discussing retaliation claim in First Amendment context).[1]

If a prima facie case is made, then the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for the adverse action. *Penny*, 128 F.3d at 417. If the defendant establishes an alternative, permissible justification, then the plaintiff must prove that the defendant's explanation is a mere pretext for its discriminatory motive. *Id.*

The plaintiff's claim for retaliation under section 504 fails because she cannot state a prima facie case. The parties disagree whether the institution of the

---

[1] Many cases identify four elements of a retaliation claim, explicitly requiring the plaintiff to show that the defendant knew of the protected activity. *See, e.g., Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000) (Title VII retaliation); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998) (ADA retaliation).

criminal action against the plaintiff qualifies as adverse action.[2] However, even assuming that the criminal proceeding here qualifies as an adverse action, the plaintiff's claim nonetheless fails because she has presented no evidence showing a causal connection between the filing of the complaint and her due process hearing request.

To establish the requisite causal connection, the plaintiff must show that the defendant knew of the protected activity. *Thaddeus-X*, 175 F.3d at 387 n.3. Logic dictates that if the defendant is unaware that the plaintiff has engaged in protected activity, "it would be impossible for the [defendant] to have made its decision *because of* the [protected activity], let alone *solely because of* the [protected activity]." *Burns*, 91 F.3d at 844 (knowledge required to establish retaliation under ADA).

The plaintiff argues that the defendant should be charged with knowledge of her due process hearing request because the conduct of the DPP, a higher echelon

---

[2]The defendant cites *Penny* for the assertion that adverse action is present only where the plaintiff is treated differently from others under the same circumstances. *Penny*, 128 F.3d at 417. The court finds it instructive that, in other contexts, unequal treatment is a factor distinct from adverse action, suggesting that the two need not coexist. *See Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004) (adverse action in First Amendment retaliation context is one "that would deter a person of ordinary firmness from continuing to engage in that conduct," without reference to treatment of similarly situated persons)*; Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996) (adverse action and different treatment are separate elements of Title VII race discrimination claim). Because the plaintiff cannot meet the burden of establishing the causation element of a prima facie case, it is not necessary to resolve this dispute.

employee of the defendant, is imputed to the defendant, and the defendant knew of the plaintiff's request at the time of the DPP's action by virtue of having received it more than two weeks earlier.

The Supreme Court has imposed vicarious liability on an employer for the conduct of a supervisor in the context of Title VII sexual harassment. *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). Other courts have approved the use of respondeat superior to support actions under section 504. *E.g., Bonner v. Lewis*, 857 F.2d 559, 567 (9th Cir. 1988). What the plaintiff fails to address, however, is that, although the doctrines of respondeat superior and vicarious liability impose responsibility despite lack of fault on the part of the employer, they apply only where the employee has actually committed a tort or breach of duty. *See, e.g. Hamilton v. Carell*, 243 F.3d 992, 1002 (6th Cir. 2001)("in order for respondeat superior liability to attach in an ERISA context, the agent must have breached his or her fiduciary duties while acting in the course and scope of employment").

In this case, there is no evidence to support the conclusion that any of the defendant's employees took an adverse action against the plaintiff that was motivated by her protected activity. The DPP was responsible for initiating the criminal proceedings, but the plaintiff has not presented any evidence to show that the DPP was aware of the due process hearing request. There is also no indication that either the attendance clerk or associate principal, who were responsible for referring J.K.'s attendance issues to the DPP, had knowledge of the request. Although an agent's knowledge may be imputed to the principal, the court knows

of no authority that would justify imputing the principal's knowledge to the agent. Thus, the fact that the defendant had received the plaintiff's hearing request does not establish that any of the defendant's employees had knowledge of that action.

Finally, even if the plaintiff had made a prima facie retaliation case under section 504, the defendant would still be entitled to summary judgment, because the plaintiff cannot show that the defendant's reliance on state truancy laws to justify its pursuit of criminal sanctions is a mere pretext for a discriminatory motive. Pretext can be established "by showing that the asserted reasons had no basis in fact, the reasons did not in fact motivate the [adverse action], or, if they were factors in the decision, they were jointly insufficient to motivate the [adverse action]." *Maddox v. University of Tennessee*, 62 F.3d 843, 848 (6th Cir. 1995) (discussing retaliation in ADA employment termination context).

Under Kentucky law, the DPP is required to "[e]nforce the compulsory attendance . . . laws in the attendance district he serves."  K.R.S. § 159.140(b).  A student is deemed an habitual truant when he has been absent from school without excuse at least nine times.  K.R.S. § 159.150.  J.K. had not been granted an exemption from the compulsory attendance requirements.  *See* K.R.S. § 159.130. The parent of an habitual truant is subject to criminal liability for intentionally failing to comply with § 159.140 or for failing to remedy the child's truancy upon notice from the DPP.  K.R.S. §§ 159.990(1); 159.180.  The DPP has the authority to commence proceedings related to violation of attendance laws.  K.R.S. § 159.130.

The laws of Kentucky governing school attendance and enforcement by the

7

DPP of those laws provide a legitimate, non-discriminatory reason for the DPP's institution of the criminal action against the plaintiff. The defendant's claimed reliance on attendance laws has a substantial basis in fact. Other than conclusory accusations that the criminal proceedings were initiated solely because of the plaintiff's request for a hearing, there is no evidence on the record that the DPP was not in fact motivated by her legal duty as DPP to prosecute the plaintiff for J.K.'s habitual truancy. The laws are sufficient to motivate the DPP to file a criminal complaint under the circumstances of this case.

In summary, the defendant is entitled to summary judgment on the plaintiff's section 504 claim because she is unable to set forth a prima facie case for retaliation. The plaintiff has provided no evidence that the defendant's pursuit of criminal punishment for J.K.'s habitual truancy was motivated by the fact that the plaintiff requested a due process hearing under the IDEA. In the absence of this crucial causal connection, the plaintiff's claim cannot succeed.

Furthermore, even if the plaintiff had presented enough evidence to create a factual dispute with regard to the relation between her protected activity and the adverse action complained of, her retaliation claim would still fail because she has submitted no evidence and the record contains no evidence that the defendant's proffered explanation for the prosecution —compliance with statutorily imposed attendance requirements and duties of the DPP — is a mere pretext for what is really a discriminatory motive.

### B. Americans with Disabilities Act

The ADA prohibits discrimination based on a person's opposition to a violation of the ADA.  42 U.S.C. § 12203(a).  Furthermore, a person who aids another individual in exercising rights guaranteed under the ADA is protected from coercion, intimidation, threats, or interference.  42 U.S.C. § 12203(b).  The plaintiff's request for a due process hearing challenged an alleged violation of her son's rights under the ADA, and she alleges that the subsequent truancy prosecution was pursued because of that activity.

Because the plaintiff alleges the same protected activity and adverse action in her ADA claim as in her section 504 claim, it is not necessary to repeat the analysis.  For the same reasons the defendant is entitled to summary judgment on the plaintiff's claim for retaliation under section 504 -- lack of proof of either causation or pretext -- the court will grant summary judgment to the defendant on the plaintiff's ADA retaliation claim.

### C.  Constitutional Violations

#### 1.  First Amendment Retaliation

A plaintiff claiming retaliation for the exercise of her right to free speech under the First Amendment must establish that (1) she was engaged in protected speech; (2) an adverse action was taken against her "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was at least partially motivated by the protected speech.  *Thaddeus-X*, 175 F.3d at 394.  The Sixth Circuit in *Thaddeus-X* recognized that the defendant must have known of the protected speech in order to satisfy the third element.  *Id.* at

387 n.3.

The plaintiff's request for a due process hearing is protected speech, and criminal prosecution would deter an ordinarily firm person from engaging in that speech. However, like the plaintiff's retaliation claims under section 504 and the ADA, the First Amendment claim also fails because the plaintiff has not produced any evidence that would indicate that the defendant knew of her request and thus that the adverse action was even partially motivated by her protected speech.

Furthermore, even if the plaintiff could make a prima facie showing of the causal connection, a burden-shifting mechanism allows a defendant to avoid liability by showing that he would have taken the adverse action even in the absence of the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). The plaintiff is unable to point to any evidence, other than her bare assertions, that creates a factual dispute as to the defendant's explanation that the criminal action was not motivated by a discriminatory animus. Therefore, the defendant is entitled to summary judgment on the plaintiff's First Amendment retaliation claim.

### 2. Fourteenth Amendment Equal Protection

The plaintiff did not contest the defendant's motion for summary judgment on her equal protection claim. The court finds that the plaintiff cannot succeed on this claim, and that the defendant is entitled to summary judgment.

The elements of an equal protection claim are 1) membership in a protected class; 2) subjection to adverse action; 3) qualification for the rights sought; and 4)

treatment different from that afforded similarly situated individuals. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). The plaintiff has not mentioned, much less produced evidence of, the existence of similarly situated individuals who were treated differently from her. That is, she has made no indication that other parents whose children were habitually truant and who failed, upon notice, to correct the problem were not prosecuted under the state laws governing mandatory school attendance. Because there is therefore no material issue of fact regarding equality of treatment, the defendant is entitled to summary judgment.

      D.      **Retaliation under K.R.S. § 344.280(1)**

Kentucky law makes it illegal to retaliate or discriminate against a person for opposing discrimination based on disability. K.R.S. §§ 344.280(1); 344.020(1)(b). One of the stated purposes of the Kentucky Civil Rights laws is to execute the policies embodied in the ADA. K.R.S. § 344.020(1)(a). The Kentucky Supreme Court has held that a retaliation claim under state law is analyzed in the same manner as a claim under federal law. *Brooks v. Lexington-Fayette Urban County Housing*, 132 S.W.3d 790, 802 (Ky. 2004).

Because the plaintiff's claims for retaliation under section 504 and the ADA fail, her claim under Kentucky law is likewise unsuccessful. The plaintiff has not produced any evidence that the defendant was aware of her protected conduct when it instituted the criminal truancy proceedings. Furthermore, the plaintiff has not put forth any proof that the defendant was motivated by anything other than its statutory duty to enforce compulsory attendance laws when it filed the complaint.

Therefore, the defendant is entitled to summary judgment on the plaintiff's state law retaliation claim.[3]

### III.    Conclusion

The plaintiff has not produced evidence to support her contention that the defendant knew of her hearing request when it instituted the criminal truancy proceeding. Furthermore, the plaintiff has not produced evidence that the defendant was motivated even in part by discriminatory animus rather than a desire to enforce state attendance laws. The plaintiff has also failed to put forth any evidence that she was treated differently than similarly situated persons. Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 13) is **GRANTED.**

**IT IS FURTHER ORDERED** that the pretrial conference on September 7, 2005, and the trial on October 11, 2005, are **CANCELLED**, and all pending motions are **DENIED AS MOOT**.

---

[3]In its answer, the defendant raised 11th Amendment immunity as a defense. In the event it is found not to have the benefit of immunity, the defendant also denies liability under § 1983 because the plaintiff has not established that adherence to or application of a government policy or custom led to the adverse action. Because the court finds that the defendant is entitled to summary judgment on all claims on their merits, it is unnecessary to address the 11th Amendment and § 1983 issues.

    <u>Signed on September 1, 2005</u>

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

13